**UNITED STATES COURT OF INTERNATIONAL TRADE**

| | |
|---|---|
| DEVI FISHERIES LIMITED, ET AL<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES,<br><br>Defendant. | Court No. 26-4296 |

**COMPLAINT**

Pursuant to Rule 3(a)(2) of the Rules of the United States Court of International Trade, Plaintiffs, Devi Fisheries Limited, et al,[1] by and through its counsel, alleges and states as follows:

**JURISDICTION**

1. Plaintiff brings this action pursuant to, and in accordance with, section 516A(a)(2)(A)(i)(I) of the Tariff Act of 1930, as amended (codified at 19 U.S.C. § 1516a(a)(2)(A)(i)(I), contesting the final results issued by the U.S. Department of Commerce ("Commerce") in Certain Frozen Warmwater Shrimp from India: Final Results of Antidumping Duty Administrative Review; 2024–2025, 91 Fed. Reg. 56861 (Dep't of Commerce Sep. 4, 2026) ("Final Results"), and accompanying Issues and Decision Memorandum (September 1, 2026) ("IDM"). This Court has jurisdiction over this matter under 28 U.S.C. § 1581(c) and 19 U.S.C. § 1516a(a)(2).

[1] Plaintiffs, totaling sixty four separate entities, filed a summons to initiate this action. See ECF No. 1.

## STANDING

2. Plaintiffs, Devi Fisheries Limited, et al, are foreign producers and exporters of the merchandise examined in the antidumping duty in the administrative review contested here. Plaintiffs therefore are an interested parties within the meaning of 19 U.S.C. § 1677(9)(A). As interested parties that actively participated in the underlying administrative proceeding, Plaintiffs have standing pursuant to 19 U.S.C. § 1516a(d) and 28 U.S.C. § 2631(c).

## TIMELINESS

3. The Final Results, which is being challenged herein, was published in the Federal Register on September 4, 2026. See 91 Fed. Reg. 56861. On October 2, 2026, within 30 days after the Final Results were published in the Federal Register, Plaintiffs filed a summons to initiate this action. See ECF No. 1. Accordingly, this action was commenced within the period specified in 19 U.S.C. § 1516a(a)(2)(A)(ii). This Complaint is being filed within 30 days of the filing of the summons. Therefore, according to the provisions of 19 U.S.C. § 1516a(a)(2)(A) and Rule 3(a)(2) of the Rules of the U.S. Court of International Trade, this action has been timely brought.

## STANDARD OF REVIEW

4. This Court reviews final results issued by Commerce pursuant to 19 U.S.C. § 1675 to determine whether they are "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i).

## PROCEDURAL HISTORY

5. On February 1, 2005, the U.S. Department of Commerce ("Commerce") published the antidumping duty order on certain frozen warmwater shrimp from India. See Notice of Amended Final Determination of Sales at Less Than Fair Value and Antidumping Duty Order: Certain Frozen Warmwater Shrimp from India, 70 Fed. Reg. 5,147 (February 1, 2005) ("Order").

6. Commerce initiated the administrative review of the Order on March 28, 2025, and supplemented the initiation notice on April 28, 2025. The period of review was February 1, 2024 through January 31, 2025 ("POR"). See Initiation of Antidumping and Countervailing Duty Administrative Reviews, 90 Fed. Reg. 14,081 (March 28, 2025); 90 Fed. Reg. 17,568 (April 28, 2025).

7. Commerce selected the Devi Group and Sandhya Aqua Exports Private Limited ("Sandhya") for individual examination and issued its antidumping duty questionnaire to both respondents on May 29, 2025. See Commerce's Memorandum, "Respondent Selection" (May 28, 2025); Commerce's Letters, "Request for Information" (May 29, 2025).

8. The Devi Group submitted its Section A response on June 19, 2025, and Sandhya submitted its Section A response on June 20, 2025. Both respondents reported that their home markets were not viable. See Devi's Letter, "Devi Fisheries Limited's Submission of Section A Response" (June 19, 2025), at 3–6 and Exhibit A-1; Sandhya's Letter, "Sandhya Aqua Exports Private Limited's Response to Section A Initial Questionnaire" (June 20, 2025), at 4–6 and Exhibit A-1. Commerce selected Canada as Sandhya's comparison market and Belgium as the Devi Group's comparison market. See Commerce's Memorandum, "Selection of an Appropriate Third Country Market for Sandhya Aqua Exports Private Limited" (June 23, 2025); Commerce's

Memorandum, "Selection of an Appropriate Third Country Market for Devi Fisheries Limited" (June 25, 2025).

9. The Devi Group submitted its Sections B and C responses on July 16, 2025, and its Section D response on July 17, 2025. See Devi Group's Letters, "Devi Fisheries Limited's submission of Section B Response" (July 16, 2025), "Devi Fisheries Limited's submission of Section C Response" (July 16, 2025), and "Devi Fisheries Limited's submission of Section D Response" (July 17, 2025). Sandhya submitted its Sections B, C, and D responses on July 17, 2025. See Sandhya's Letters, "Sandhya Aqua Exports Pvt Ltd's submission of Section B Response," "Sandhya Aqua Exports Pvt Ltd's submission of Section C Response," and "Sandhya Aqua Exports Pvt Ltd's submission of Section D Response" (July 17, 2025).

10. In its Section A response, Sandhya reported that it sold all merchandise to the U.S. and Canadian markets through affiliates, which resold to unaffiliated customers directly from the port of import or from cold storage. Sandhya handled production, storage, sale, and shipment in India, while the affiliates handled sales to unaffiliated customers in their respective markets. See Letter from S Kunapuli & Co, "Administrative Review of the Antidumping Duty Order on Frozen Warmwater Shrimp from India: Sandhya Aqua Exports Private Limited's Response to Section A Initial Questionnaire" (June 20, 2025) ("Sandhya's Section A Response"), at 35–36.

11. Sandhya reported that its Canadian affiliate performed selling activities including customer contact, negotiation of prices and delivery terms, processing purchase orders, inventory storage, customs clearance, collection of payments, and resolution of delivery or quality issues. For the corresponding U.S. affiliate activities, Sandhya repeatedly stated that the services were "Identical to the services rendered in Canada." See Sandhya's Section A Response, at 37–39.

12. On July 17, 2025, Sandhya submitted its Section B response reporting downstream Canadian sales by AZ Gems Canada Inc. ("AZ Canada"), also doing business as Select Source Seafood. Sandhya stated that it had no direct sales to unaffiliated Canadian customers and that all its U.S. sales were constructed export price ("CEP") sales. See Letter from S Kunapuli & Co, "Administrative Review of the Antidumping Duty Order on Frozen Warmwater Shrimp from India: Sandhya Aqua Exports Pvt Ltd's submission of Section B Response" (July 17, 2025) ("Sandhya's Section B Response"), at 1–3.

13. Sandhya separately reported indirect selling expenses incurred in India and Canada. Its Section B response stated: "AZ Canada has incurred some indirect selling expenses in Canada. These expenses were reported in {INDIRS2T}." Sandhya also provided the calculation in Exhibit B-31. It separately reported Canadian inventory carrying costs and provided the calculation in Exhibit B-33. See Sandhya's Section B Response, at 51–54 and Exhibits B-30 through B-33.

14. Both respondents submitted Section D responses on July 17, 2025 identifying raw shrimp as the principal material used to produce frozen shrimp. Each stated that "there is only one significant direct material input, and it is raw shrimp." They provided monthly raw shrimp quantities and values in Exhibit D-5 and quarterly purchase quantities, values, and average per-unit costs for selected raw shrimp count sizes in Exhibit D-6. See Letter from Devi Fisheries Limited, "Administrative Review of the Antidumping Duty Order on Frozen Warmwater Shrimp from India: Devi Fisheries Limited's submission of Section D Response" (July 17, 2025) ("Devi's Section D Response"), at 13–14 and Exhibits D-5 and D-6; Letter from S Kunapuli & Co, "Administrative Review of the Antidumping Duty Order on Frozen Warmwater Shrimp

from India: Sandhya Aqua Exports Pvt Ltd's submission of Section D Response" (July 17, 2025) ("Sandhya's Section D Response"), at 12–14 and Exhibits D-5 and D-6.

15. The respondents explained that they identified the five product control numbers ("CONNUMs") with the highest sales volumes in the U.S. market and their respective comparison markets, identified the raw shrimp count sizes used to produce those products, and tabulated quarterly purchase quantities and values for those raw materials. The respondents supplied this information in response to Commerce's questions concerning whether cost changes during the POR warranted an alternative cost-averaging methodology. See Devi's Section D Response, at 13–15 and Exhibit D-6; Sandhya's Section D Response, at 13–15 and Exhibit D-6.

16. On September 24, 2025, Sandhya submitted a supplemental Sections A and B response correcting its Canadian indirect selling expense calculation and providing a revised worksheet in Exhibit SAB-36. Sandhya stated that the corrected expenses reconciled to AZ Canada's financial statements covering the POR. It provided the workings used to construct AZ Canada's POR trial balance in Exhibit SAB-50 and an allocation of expenses by function in Exhibit SAB-51. Sandhya also supplied Canadian inventory carrying cost calculations in Exhibit SAB-40, supporting documentation for the cost-of-goods-sold and inventory values in Exhibit SAB-41, and a revised Canadian sales database in Exhibit SAB-48. See Letter from S Kunapuli & Co, "Administrative Review of the Antidumping Duty Order on Frozen Warmwater Shrimp from India: Sandhya Aqua Exports Pvt Ltd's response to Sections A and B supplemental questionnaire" (September 24, 2025) ("Sandhya's SABQR"), at 26–28, 30 and Exhibits SAB-36, SAB-40, SAB-41, SAB-48, SAB-50, and SAB-51.

17. On October 9, 2025, Sandhya submitted a supplemental Section C response correcting its U.S. affiliate's indirect selling expenses and reporting the revised amounts in its U.S. sales database. It provided the expense calculation, POR trial balance, and allocation by function in Exhibits SC-40 through SC-42, and the U.S. inventory carrying cost calculation in Exhibit SC-46. See Letter from S Kunapuli & Co, "Administrative Review of the Antidumping Duty Order on Frozen Warmwater Shrimp from India: Sandhya Aqua Exports Pvt Ltd's response to of Section C supplemental questionnaire" (October 9, 2025) ("Sandhya's SCQR"), at 21–24 and Exhibits SC-40 through SC-42, SC-46, and SC-49.

18. In the same response, Sandhya added two U.S. selling-expense fields that it had omitted from its initial response. OTUSSE1U reported expenses identified with specific customers. OTUSSE2U reported expenses that could not be identified with specific customers and were allocated to all reported sales. Sandhya provided the revised database in Exhibit SC-49 and the expense particulars in Exhibit SC-51. See Sandhya's SCQR, at 24–25 and Exhibits SC-49 and SC-51.

19. Commerce published the preliminary results on May 4, 2026. Commerce calculated weighted-average dumping margins of 2.36 percent for the Devi Group and 4.30 percent for Sandhya, and assigned the non-individually examined companies a rate of 3.33 percent based on a simple average of those margins. See Certain Frozen Warmwater Shrimp from India: Preliminary Results of Antidumping Duty Administrative Review; 2024–2025, 91 Fed. Reg. 23,961, 23,962 (May 4, 2026) ("Preliminary Results"). See also Decision Memorandum for the Preliminary Results of the Administrative Review of the Antidumping Duty Order on Certain Frozen Warmwater Shrimp from India; 2024–2025 (April 28, 2026) ("PDM").

20. For the Preliminary Results, Commerce applied a differential pricing analysis to determine whether to use the average-to-transaction ("A-T") comparison method instead of the average-to-average ("A-A") comparison method. Commerce explained that it applied the framework of section 777A(d)(1)(B) of the Act by analogy in administrative reviews under 19 C.F.R. § 351.414(c)(1). Commerce also explained that, following Federal Circuit decisions concerning the statistical assumptions underlying the Cohen's *d* test, it had discontinued that test and the "mixed method" as a potential alternative comparison methodology. See PDM, at 5–6 & n.27.

21. Under Commerce's new price difference test, prices for comparable merchandise were found to differ significantly when the weighted-average net price to a given purchaser, region, or time period fell outside a band of plus or minus two percent around the weighted-average net price to all other purchasers, regions, or time periods, respectively. Sales to that purchaser, region, or time period were therefore treated as passing the price difference test. See PDM at 6–7.

22. Under the ratio test, Commerce considered use of A-T when more than 33 percent of the total value of U.S. sales passed the price difference test. Commerce then compared the weighted-average dumping margins calculated under A-A and A-T to determine whether A-A could account for the identified price differences. Commerce considered the difference meaningful if there was a 25-percent relative change when both margins were above the *de minimis* threshold, or if the margins crossed that threshold. Commerce had discontinued the "mixed method," under which A-A would apply to non-passing sales and A-T to passing sales. See PDM at 6 n.27, 7.

23. Commerce preliminarily found that 75.80 percent of the value of the Devi Group's U.S. sales and 77.26 percent of the value of Sandhya's U.S. sales passed the price difference test. The preliminary calculation memoranda reported A-A margins of 0.00 percent for both respondents, compared with A-T margins of 2.36 percent for the Devi Group and 4.30 percent for Sandhya. Commerce applied A-T to all U.S. sales for both respondents. See Memorandum to the File, "Preliminary Results Calculations for Devi Fisheries Limited" (April 28, 2026) ("Devi's Preliminary Calculation Memorandum"), at 8; Memorandum to the File, "Preliminary Results Calculations for Sandhya Aqua Exports Private Limited" (April 28, 2026) ("Sandhya's Preliminary Calculation Memorandum"), at 6.

24. Commerce used annual weighted-average POR costs. In each respondent's preliminary calculation memorandum, Commerce explained that it first examined whether quarterly cost changes were significant before considering any linkage between costs and selling prices. After reviewing quarterly changes in raw-material purchase prices and the inputs' shares of total manufacturing cost, Commerce found no significant quarterly change warranting further analysis. See Devi's Preliminary Calculation Memorandum, at 2; Sandhya's Preliminary Calculation Memorandum, at 2; PDM, at 13.

25. Commerce based normal value on the Devi Group's sales in Belgium and Sandhya's sales in Canada. Commerce determined that each respondent's U.S. and comparison-market sales were made at the same level of trade and that no level-of-trade adjustment was warranted. For Sandhya, Commerce relied on the reported similarity of services in both markets and stated: "No record information contradicts this claim." See PDM, at 11–13.

26. In calculating Sandhya's CEP, Commerce deducted movement expenses and U.S. selling expenses, including the U.S. affiliate's indirect selling expenses and inventory carrying costs, and made a CEP profit adjustment. See PDM, at 10–11. For comparison-market sales, Commerce applied AZ Canada's inventory carrying cost ratio to its gross unit resale price rather than Sandhya's costs and aggregated the Indian and Canadian inventory carrying costs and indirect selling expenses. See Sandhya's Preliminary Calculation Memorandum at 3–4. Commerce deducted the Canadian affiliate's indirect selling expenses and inventory carrying costs for the below-cost test but retained those expenses in normal value. Thus, the corresponding affiliate expenses were deducted from the U.S. price but remained in the Canadian price used for the dumping comparison. See PDM, at 14–15; IDM at 14–15, Comment 3.

27. Commerce preliminarily increased U.S. prices to account for countervailable export subsidies, applying offset rates of 5.46 percent for Sandhya and 5.69 percent for the Devi Group based on the final results of the companion CVD investigation. Commerce applied these offsets to all reported U.S. sales without restricting them by entry date. See Devi's Preliminary Calculation Memorandum at 3, 5–6 and Attachment 5; Sandhya's Preliminary Calculation Memorandum at 5 and Attachment IV.

28. On May 26, 2026, the Ad Hoc Shrimp Trade Action Committee ("Petitioner"), the American Shrimp Processors Association ("ASPA"), the Devi Group, and Sandhya and other Indian exporters submitted case briefs. See Petitioner's Letter, "Case Brief" (May 26, 2026); ASPA's Letter, "American Shrimp Processors Association's Case Brief" (May 26, 2026); Devi Group's Letter, "Case Brief" (May 26, 2026); Sandhya and Indian Exporters' Letter, "Case Brief" (May 26, 2026). On June 1, 2026, Petitioner and ASPA submitted rebuttal briefs, and the Devi Group and Sandhya submitted a joint rebuttal brief. See Petitioner's Letter, "Rebuttal

Brief" (June 1, 2026); ASPA's Letter, "American Shrimp Processors Association's Rebuttal Brief" (June 1, 2026); Devi Group and Sandhya's Letter, "Rebuttal Brief" (June 1, 2026).

29. The Devi Group and Sandhya challenged Commerce's two-percent price difference threshold as insufficient to identify significant price differences in the frozen shrimp market. Their case briefs explained that the arm's-length test and the *de minimis* threshold served different purposes and did not establish the significance of two-percent differences among U.S. net prices. Based on quarterly variations in raw shrimp costs and raw shrimp's share of production costs, the respondents argued that a threshold of approximately twelve percent was more appropriate. See Devi Fisheries Limited's Case Brief (May 26, 2026) ("Devi's Case Brief"), at 1–5; Sandhya and Indian Exporters' Case Brief (May 26, 2026) ("Sandhya's Case Brief"), at 10–14.

30. Sandhya also requested a deduction from normal value for AZ Canada's indirect selling expenses and inventory carrying costs. Sandhya explained that the claim concerned the Canadian affiliate's expenses, not the expenses incurred by Sandhya in India, and pointed to the parallel affiliate resale structures in the United States and Canada. Sandhya requested the deduction or, alternatively, "a reasoned explanation, based on Sandhya's actual selling structure and record evidence," for retaining the Canadian expenses in normal value while deducting the U.S. affiliate's expenses from CEP. See Sandhya's Case Brief, at 3–10.

31. Petitioner and ASPA challenged the preliminary export-subsidy offsets. See Petitioner's Letter, "Case Brief" (May 26, 2026), at 2–8; ASPA's Letter, "American Shrimp Processors Association's Case Brief" (May 26, 2026), at 1–3. In their joint rebuttal brief, the Devi Group and Sandhya requested application of the final export-subsidy rates to entries from April 1, 2024

through January 31, 2025, including gap-period entries. See Devi Fisheries Limited and Sandhya Aqua Exports Pvt Ltd's Rebuttal Brief (June 1, 2026) ("Joint Rebuttal Brief"), at 2–4, 7. The joint rebuttal further argued that the rule limiting CVD assessments on provisional-period entries did not justify using lower preliminary export-subsidy rates in the antidumping calculation. See Joint Rebuttal Brief, at 3.

32. Commerce issued the issues and decision memorandum on September 1, 2026 and published the Final Results on September 4, 2026. Commerce retained its preliminary methodology except for revisions to both respondents' export-subsidy offsets and corrections to Sandhya's U.S. net-price calculations. See Certain Frozen Warmwater Shrimp from India: Final Results of Antidumping Duty Administrative Review; 2024–2025, 91 Fed. Reg. 56,861 (September 4, 2026) ("Final Results"); Issues and Decision Memorandum for the Final Results of the Antidumping Duty Administrative Review of Certain Frozen Warmwater Shrimp from India; 2024–2025 (September 1, 2026) ("IDM"), at 3.

33. Commerce retained the two-percent price difference threshold for the Final Results. In rejecting the proposed twelve-percent threshold, Commerce stated that the respondents had not explained how variations in raw-material prices could establish whether U.S. prices differed significantly among purchasers, regions, or time periods, or demonstrated how the proposed threshold was calculated from record information. See IDM, at 11–12, Comment 2.

34. For the Final Results, Commerce reported that 81.20 percent of the value of the Devi Group's U.S. sales and 86.83 percent of the value of Sandhya's U.S. sales passed the price difference test. The Devi Group's final A-A and A-T margins were 0.00 percent and 4.04 percent, respectively. Sandhya's final A-A and A-T margins were 3.58 percent and 7.01 percent,

respectively. Commerce continued to apply A-T to all U.S. sales for both respondents. See Memorandum to the File, "Final Results Calculations for Devi Fisheries Limited" (September 1, 2026) ("Devi's Final Calculation Memorandum"), at 3; Memorandum to the File, "Final Results Calculations for Sandhya Aqua Exports Private Limited" (September 1, 2026) ("Sandhya's Final Calculation Memorandum"), at 3.

35. Commerce limited the final export-subsidy offsets by entry date. For entries from April 1 through July 29, 2024, Commerce applied 4.21 percent for the Devi Group and 3.82 percent for Sandhya, based on preliminary CVD export-subsidy rates. For entries on or after December 17, 2024, Commerce applied the final export-subsidy rates of 5.69 percent and 5.46 percent, respectively. The final programs provided "ELSE CVDU = 0," excluding entries before April 1, 2024 and during the July 30–December 16, 2024 gap. See Devi's Final Calculation Memorandum, at 2–3; Sandhya's Final Calculation Memorandum, at 2–3.

36. Commerce declined to deduct the Canadian affiliate's indirect selling expenses and inventory carrying costs from normal value, rejecting Sandhya's argument that a deduction was necessary for a fair comparison because sales in both markets were made through affiliates. See IDM, at 14–15, Comment 3.

37. Commerce calculated final weighted-average dumping margins of 4.04 percent for the Devi Group and 7.01 percent for Sandhya. Commerce assigned the companies not selected for individual examination a rate of 5.53 percent based on a simple average of the two mandatory respondents' margins. See Final Results, 91 Fed. Reg. at 56,861.

38. In the following respects, Commerce's Final Results are unsupported by substantial evidence on the record or otherwise not in accordance with law.

## STATEMENT OF CLAIMS

### COUNT ONE

39. Plaintiffs incorporate the allegations contained in paragraphs 1 through 38 as fully set forth herein.

40. Commerce erroneously applied a two-percent price difference threshold to identify significant differences among the Devi Group's and Sandhya's U.S. sales prices and to depart from the average-to-average comparison method.

41. Commerce failed to justify that threshold in light of the respondents' raw shrimp cost evidence. Commerce reliance on the arm's-length test and the *de minimis* threshold did not establish that two-percent differences among U.S. prices were significant. Commerce's selection and application of the threshold are unsupported by substantial evidence and otherwise not in accordance with law.

### COUNT TWO

42. Plaintiffs incorporate the allegations contained in paragraphs 1 through 41 as fully set forth herein.

43. Commerce erroneously applied the average-to-transaction comparison method to all of the Devi Group's and Sandhya's U.S. sales, including sales that did not pass its price difference test.

44. Commerce failed to justify applying the alternative comparison method to sales that its own test did not identify as significantly different, rather than applying the average-to-average method to those sales. That determination is unsupported by substantial evidence and otherwise not in accordance with law.

**COUNT THREE**

45. Plaintiffs incorporate the allegations contained in paragraphs 1 through 44 as fully set forth herein.

46. Commerce erroneously declined to deduct the Canadian affiliate's indirect selling expenses and inventory carrying costs from Sandhya's normal value while deducting the U.S. affiliate's corresponding expenses in calculating constructed export price.

47. Commerce's deduction of the Canadian expenses solely for the below-cost test did not remedy the unequal treatment of affiliate expenses in the prices compared. Commerce's refusal to deduct those expenses from normal value failed to achieve a fair comparison and is unsupported by substantial evidence and otherwise not in accordance with law.

**COUNT FOUR**

48. Plaintiffs incorporate the allegations contained in paragraphs 1 through 47 as fully set forth herein.

49. Commerce erroneously used preliminary export-subsidy rates rather than the final export-subsidy rates from the companion countervailing duty investigation to calculate the Devi Group's and Sandhya's export-subsidy offsets for entries from April 1 through July 29, 2024.

50. Commerce improperly treated the provisional-measures assessment cap as limiting the export-subsidy adjustment in the antidumping calculation. Its use of the lower preliminary export-subsidy rates is otherwise not in accordance with law.

**DEMAND FOR JUDGMENT AND PRAYER FOR RELIEF**

51. For the reasons stated above, Plaintiffs respectfully request that the Court:

(a) enter judgment in Plaintiffs' favor;

(b) declare that with respect to the issues raised in this Complaint Commerce's determinations and all related findings and conclusions are unsupported by substantial evidence on the record or are otherwise not in accordance with law;

(c) remand these matters to Commerce for redetermination consistent with the Court's opinion; and

(d) provide such other relief as the Court deems just and proper.

Respectfully submitted,

/s/ Jonathan M. Freed
Jonathan M. Freed
MacKensie R. Sugama
Didie Muller

**TRADE PACIFIC PLLC**
700 Pennsylvania Avenue, SE, Suite 500
Washington, DC 20003
Tel: (202) 223-3760
jfreed@tradepacificlaw.com

*Counsel for Plaintiffs*

Dated: October 30, 2026